**James LeRoy DILLBECK, Petitioner,**

v.

**Jack R. DUCKWORTH, Superintendent, and Indiana Attorney General, Respondents.**

**No. S83–493.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 25, 1984.

**1076**

James LeRoy Dillbeck, pro se.

Linley E. Pearson, Atty. Gen. of Indiana, Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 by an inmate at the Indiana State Prison in Michigan City, Indiana. In accord with the dictates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the complete state court record has been filed with, and carefully examined by, this court. Both sides having briefed their respective positions,[1] this matter is now ripe for ruling.

Petitioner was convicted in a state court jury trial of escape, for which he received a determinate sentence of four years. His conviction was unanimously affirmed by the Court of Appeals of Indiana

---

1. Pursuant to respondents' notice under *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), petitioner filed a lengthy, handwritten traverse on December 15, 1983. It is one of the best prepared *pro se* traverses this court has examined.

in an unpublished opinion which has been examined and considered by this court. Because petitioner is raising the same issues here that he raised in his state court appeal, he has exhausted his available state court remedies. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). Petitioner has made no request for "appointed" counsel under 28 U.S.C. § 1915(d).

## I.

Petitioner argues that the state trial court erred when, during a hearing on petitioner's motion for change of venue, the court granted a television station's motion to quash petitioner's subpoena and denied petitioner's motion for continuance when another television station allegedly failed to comply with petitioner's subpoena. As a result of this, petitioner claims that he was unable to show that he could not receive a fair trial due to pretrial media publicity and that his Fifth Amendment right to due process was thereby violated.

■ Granting or denying a change of venue motion is within the trial court's discretion. *United States v. Lamb,* 575 F.2d 1310, 1315 (10th Cir.), *cert. denied sub nom. Clary v. United States,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978).

■ In a well reasoned decision, the United States Court of Appeals for the Seventh Circuit discussed a defendant's Fifth Amendment rights in conjunction with a motion for change of venue:

> Appellants' initial contentions concern adverse pretrial publicity which they claim prejudiced the jury. Due process, of course, requires that an accused be tried by an impartial jury free from outside influences. *Maxwell v. Sheppard,* 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). Impartiality, however, does not mean complete juror ignorance of issues and events. *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). If a juror can put aside his impressions gained from pretrial publicity and render a fair verdict based upon the evidence, the im-
> partiality requirement is satisfied. *Dobbert v. Florida,* 432 U.S. 282, 302, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977); *Murphy v. Florida,* 421 U.S. 794 (800), 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1642; *United States v. Provenzano,* 620 F.2d 985, 995 (3rd Cir. 1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980). Where juror exposure to pretrial publicity can be shown, defendants must still demonstrate that actual prejudice resulted. *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1642; *United States v. Thompson,* 615 F.2d 329, 333 (5th Cir.1980). (footnotes omitted).

*United States v. Garza,* 664 F.2d 135, 138 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982).

At the hearing on the motion for change of venue, petitioner presented evidence concerning the news coverage of his case (R. 183–191; 194–197; 202–205; 207–216; 217–222). This evidence, however, did not reveal any great community bias against petitioner. The stories and articles were factual, not sensationalized. Moreover, with respect to television coverage, there was evidence that the stations in the area used about the same type and amount of coverage for their news stories (R. 189). Thus, it is reasonable to assume that the remaining two stations, which did not present evidence at the hearing, would have added nothing to petitioner's claims not already shown by the station which did present evidence.

■ Even assuming that the potential jurors had been exposed to pretrial publicity concerning petitioner's case, this is far from sufficient to establish juror prejudice; rather, petitioner must demonstrate that the jurors were unable to set aside those notions. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

It is true that during the jury voir dire some of the prospective jurors had indicated that they had heard of the case from the news media. However, these jurors

stated that they would be able to put aside this information and decide the case solely upon the evidence presented at trial (R. 239, *et seq.*) The jurors ultimately selected to hear the case, when questioned regarding any media information they may have heard concerning the case, specifically stated either that they had no knowledge of the case or that they would be able to set aside such information and try the case solely on the evidence presented at trial (R. 257–258; 267; 271–273; 303; 325; 327; 358; 397–398; 400; 402–403).

■ Under Indiana law, the granting of a motion for change of venue in a criminal case (except those punishable by death) is discretionary with the trial court and will not be reversed unless there is a clear showing of abuse of discretion. *Dorton v. State,* Ind., 419 N.E.2d 1289, 1294 (1981).

The facts of the present case evidence that the trial court did not err in denying petitioner's motion for change of venue.

## II.

Petitioner argues that his due process rights were violated for the reason that the prosecutor at trial was a potential witness. Petitioner supports this allegation by contending that the prosecutor was the first individual to discover a pair of sandals located outside the window where the escape occurred. The petitioner was well aware of this fact prior to trial, or at least prior to the close of all the evidence (R. 469–470), yet raised no objection until he requested a mistrial at the conclusion of the evidence.

■ The Supreme Court of Indiana has held that it is the better practice for a prosecutor to recuse himself if he *becomes* a witness. *State ex rel. Goldsmith v. Superior Court of Hancock County,* 270 Ind. 487, 386 N.E.2d 942 (1979). However, the Supreme Court of Indiana has additionally stated that if the testimony of a prosecutor is not directed to a material issue, then it is permissible for the prosecutor to become a witness. *Cherry v. State,* Ind., 414 N.E.2d 301, *cert. dismissed,* 453 U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033 (1981). In the present

case the prosecutor was never a witness, nor did he ever intend to be a witness.

The Seventh Circuit in *United States v. Johnston,* 690 F.2d 638 (7th Cir.1982) (en banc) reviewed the legal ramifications resulting from a situation wherein the prosecutor will be a witness:

> The Code's Disciplinary Rules have codified this ethical consideration. The rules prohibit an attorney from accepting employment in contemplated or pending litigation when it is obvious that he will be called as a witness. If the need for his testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial. These requirements do not apply, however, in exceptional circumstances enumerated in the Disciplinary Rules: where the testimony will relate solely to an uncontested or formal matter and there is no reason to believe that substantial evidence will be offered in opposition to the testimony, and where refusal to testify would work a "substantial hardship" on the client. These ethical rules apply to all lawyers, including government prosecutors, although application of the rule varies depending on the circumstances in individual cases. (footnotes omitted).

*Id.* at 642.

■ The Seventh Circuit has further held that when prosecutorial misconduct is alleged the misconduct must be truly outrageous before due process will prevent conviction of a defendant. *United States v. Kaminski,* 703 F.2d 1004 (7th Cir.1983). Further, a defendant can complain of prosecutorial misconduct only if he can show that he was prejudiced. *Hubbard v. United States,* 668 F.2d 1238 (D.C.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

This court has recently dealt with the issue of prosecutorial misconduct in the context of a Section 2254 habeas proceeding. See *Rose v. Duckworth,* 578 F.Supp. 1387 (N.D.Ind.1984); *Osborne v. Duckworth,* 567 F.Supp. 427 (N.D.Ind.1983); and *Morrison v. Duckworth,* 550 F.Supp. 533

(N.D.Ind.1982). For the most recent Supreme Court case, one from this circuit, *see U.S. v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

None of these cited cases are authority for granting this writ on the basis of alleged prosecutorial misconduct.

■ In this case the prosecutor never testified. The prosecutor's observation of a pair of sandals was not material to establish that defendant committed the crime of escape. Petitioner has shown no prejudice resulting from the prosecutor trying his case.

### III.

Petitioner next alleges that the prosecutor suborned testimony of a county sheriff to the effect that the petitioner was in the sheriff's continuous custody during a period of time when in fact both the prosecutor and sheriff knew that he was not. At the trial petitioner raised no objection to the testimony, nor did he cross-examine the sheriff.

In reliance upon this challenge, petitioner argues that the sheriff's jail log, which was never introduced as evidence at the trial and was never part of the record of the proceedings, reflected that petitioner was not in the sheriff's continuous custody during the period of time covered by the sheriff's testimony.

■ The Fourteenth Amendment prohibits a knowing and deliberate use of perjured evidence in order to obtain a conviction. In order for a defendant to raise a constitutional issue, however, he must show prosecutorial involvement in the alleged perjury at his state trial. *Burks v. Egeler,* 512 F.2d 221 (6th Cir.), *cert. denied,* 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975).

Petitioner's claim of perjured testimony concerns only one question and answer from his entire trial.

Q. And was he maintained in your custody between June 11th and up to August 11th continuously?

A. Yes sir.

(R. 442, ls. 3–5).

■ When compared with the jail log, or with information known to both the prosecutor and the sheriff, the testimony is technically incorrect. However, the only reason it is incorrect is due to petitioner's escape from the jail on June 19, 1980. Petitioner, from June 11 to August 11, 1980, was *supposed* to have been maintained in the custody of the sheriff. Petitioner, from June 11 to August 11, 1980, was therefore not *lawfully* out of the sheriff's custody. Perhaps this is what the sheriff actually intended to convey to the jury, but the prosecutor's question was apparently misunderstood by the witness. The record as a whole does not indicate any intentional falsification of testimony; at most, the complained of testimony was an inadvertent mistake or misunderstanding which may be construed as aiding rather than damaging this petitioner.

Regardless of the above, the petitioner was charged with the crime of escape on August 11, 1980, on which date there is no conflict that the petitioner was in the custody of the sheriff (R. 439–444; 446–447). Thus, even if the complained of testimony is considered to have been false, there is no reasonable likelihood that the false testimony could have adversely affected the judgment of the jury. Petitioner has not shown any resulting prejudice from the mistaken testimony of the sheriff. *United States v. Johnson, supra.*

The factual averments of the petitioner here do not display a setting where the prosecutor obtained a conviction based upon suborned perjured testimony. *Burks v. Egeler, supra.*

*Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), held that a state prisoner was barred by his failure to make a timely objection at trial from raising a constitutional claim on direct appeal and was also barred from raising the same claim in a habeas corpus petition under § 2254 unless the petitioner showed both cause for the failure and *actual* prejudice resulting therefrom. Here this claim

was presented to the Court of Appeals of Indiana and was dealt with in that court's unpublished opinion. The failure that was described in part II of *U.S. ex rel. Sullivan v. Fairman,* 731 F.2d 450 (7th Cir.1984) is not present here.

### IV.

Following jury voir dire but before the presentation of evidence, petitioner made an oral motion that his leg-irons be removed (R. 422, ls. 7–12). Petitioner also moved for a mistrial based upon the fact that he had been in leg-irons since his trial had started (R. 422, ls. 13–17). Petitioner also claimed he had walked in front of the jury with the leg-irons on when he had been taken to the restroom (R. 423, ls. 16–19). The prosecutor responded to petitioner's motion by arguing that petitioner was being tried for escape; that he had previously been convicted of escape; that he was facing a potential habitual offender charge as well as detainers from other jurisdictions; and that petitioner was a grave security risk (R. 422, 1.1, 423, 1.1). Also, petitioner had not objected to the leg-irons until that point in the trial (R. 423, ls. 1–7).

The trial court denied both of petitioner's motions, although the judge indicated that if petitioner took the stand to testify the leg-irons would be removed for that purpose (R. 423, ls. 9–14). Petitioner argues that the trial court's ruling violated his right to due process and prejudiced him in the eyes of the jurors because he was tried in identifiable prison garb.

■ Pursuant to the circumstances at trial evidencing the petitioner's propensity for escape, the trial court did not abuse its discretion in permitting the petitioner to appear at trial in leg-irons. *Patterson v. Estelle,* 494 F.2d 37 (5th Cir.), *cert. denied,* 419 U.S. 871, 95 S.Ct. 130, 42 L.Ed.2d 110 (1974).

The record in this case is in contrast to that in *Osborne v. Duckworth,* 567 F.Supp. 427 (N.D.Ind.1983). Here there was recent historical evidence that this petitioner had used an occasion of being in that very same courthouse to effect an escape. In this case the need to prevent further such attempts at escape by this petitioner are clear from the record. The ideas expressed in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), and *Harrell v. Israel,* 672 F.2d 632 (7th Cir.1982), were not constitutionally contraversed here. The specific facts of *Harrell v. Israel* are relevant here. The results there, borne in the factual setting of that case, well support the action of the state trial judge here.

### V.

■ Petitioner was charged and convicted of the crime of escape. Under Indiana law, it was necessary for the prosecution to establish beyond a reasonable doubt that petitioner (1) intentionally fled (2) from lawful detention. Ind.Code § 35–44–3–5. Petitioner argues that the evidence at trial was insufficient to establish that he was in lawful detention on August 11, 1980.

> The test to be applied is as follows: [T]he applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 [99 S.Ct. 2781, 2791, 61 L.Ed.2d 560] (1979). (footnote omitted).

Application of the reasonable doubt standard calls for a "fine resolution of conflicting evidence." *Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975).

■ Petitioner was tried by jury. It is axiomatic that jury verdicts are entitled to considerable deference, even though *Jackson* points out that it is of no constitutional significance that the trier of fact in that case was a judge rather than a jury. *Jackson, supra,* 443 U.S. at 317, n. 8, 99 S.Ct. at 2788, n. 8. Jury verdicts are sustained even if the jury would have been justified in having a reasonable doubt and even if a jury might have reached a contrary conclusion. *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32

L.Ed.2d 152 (1972); *see also, Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966). It is presumed that jurors understand and properly carry out their responsibility to conclude that the defendant is guilty beyond a reasonable doubt. *Johnson, supra*, 406 U.S. at 361–362, 92 S.Ct. at 1624–1625. Appellate courts (presumably courts sitting in habeas corpus proceedings since *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) is applied to such proceedings through *Jackson, supra*) do not sit "to weigh the evidence or to determine the credibility of evidence." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590, *reh. denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974).

In the presentation of its case, the prosecution entered into evidence copies of docket entries from the Warrick Superior Court entitled: *State of Indiana v. James LeRoy Dillbeck*, No. 80–CR–23 (R. 436–438), which entries had been deleted of references to other crimes charged against petitioner (R. 427–433). The docket entry for June 11, 1980, showed that bond had been set in that cause at two thousand dollars (R. 436). The entry for August 4, 1980, showed that further proceedings in the cause were scheduled for 9:00 A.M. on August 11, 1980, in the Warrick Superior Court (R. 437). The entry for August 11, 1980, showed that the proceedings set for that day were continued indefinitely and an arrest warrant was issued against petitioner due to his failure to appear (R. 438).

The title of that cause (*State of Indiana v. James LeRoy Dillbeck*), the fact that it had a criminal court cause number (80–Cr–23), the fact that bond was set in the cause, and the fact that a bench warrant was issued for the arrest of petitioner when he failed to appear in court as ordered, clearly demonstrate that petitioner was under arrest and had been charged with a criminal offense.

Furthermore, Sheriff Gore testified that prior to August 11, 1980, petitioner was a prisoner in the Warrick County Jail (R. 439) and that no bond had been posted for petitioner's release (R. 440–442), nor had petitioner been given permission to leave (R. 442, ls. 6–11). The Sheriff further stated that on August 11, 1980, petitioner was transported from the Warrick County Jail to the Warrick County Courthouse by Chief Deputy Goings but did not return to jail (R. 442–443). Petitioner was returned to the Warrick County Jail on December 10, 1980 (R. 443–444).

Deputy Goings testified that on the morning of August 11, 1980, he transported petitioner from his jail cell in the Warrick County Jail to the Warrick Superior Court (R. 446). At that time, petitioner was recovering from a knee injury and walked with the use of a crutch (R. 447–448; 451). Petitioner, also, wore thongs on his feet (R. 447–448).

While waiting to enter the courtroom, petitioner requested permission to use the restroom, which Deputy Goings permitted (R. 449–450). After a few minutes Deputy Goings entered the restroom, saw petitioner's crutch near an open window, but was unable to find petitioner (R. 451–452; 455–456). Defendant had not been given permission to leave (R. 451, 1.30, 452, 1.2).

Petitioner's sandals were recovered on January 10, 1981 from the balcony outside the courthouse restroom from which he had disappeared on August 11, 1980 (R. 464–466; 481).

Officer William Partridge of the Indiana State Police testified that on December 10, 1980, he was requested by Sheriff Gore to transport petitioner back to the Warrick County Jail and that he recovered petitioner from the Anderson, Indiana, Jail and transported him back to the Warrick County Jail (R. 496–498).

The defense and prosecution offered into evidence a stipulation that the Clerk of the Warrick Circuit and Superior Courts would testify that no bond had been posted for James LeRoy Dillbeck in cause number 80–CR–23 (R. 494–495).

■ The evidence presented at trial permits of only one reasonable conclusion: that on August 11, 1980, petitioner was incarcerated at the Warrick County Jail on criminal charges; that he was transported to the Warrick County Courthouse that morning for a hearing on the charges against him for which no bond had been posted; that he climbed out of the restroom window of the courthouse, jumped to the ground and fled the county, and was not apprehended for several months, at which time he was returned to the Warrick County Jail. The evidence presented at trial was sufficient to sustain petitioner's conviction for the crime of escape.

## VI.

Petitioner argues that he received constitutionally deficient assistance of counsel at his trial.

■ The Sixth Amendment's guarantee of a right to counsel necessarily includes the right to the effective assistance of counsel. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The burden of demonstrating ineffectiveness of counsel amounting to a deprivation of constitutional rights is on the petitioner. *Matthews v. United States*, 518 F.2d 1245 (7th Cir.1975). There is also a presumption that counsel was conscious of his duties to his client and that he sought conscientiously to discharge those duties. *United States v. Fleming*, 594 F.2d 598 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979). In this circuit, the prevailing standard for evaluating claims of ineffectiveness of counsel was set out in *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975):

> The criminal defendant, whether represented by his chosen counsel, or a public agency, or a court-appointed lawyer, has the constitutional right to an advocate whose performance meets a minimum professional standard.

*Id.* at 640.

■ Tactical or strategic errors do not raise a presumption of a failure to meet the constitutional guarantee of adequate counsel. *United States v. Fleming, supra,* at 607. In *United States ex rel. Williams v. Twomey, supra,* the Court stated that:

> We are aware that this decision goes beyond an inquiry as to whether the state court trial was a sham or a mockery. But we have not gone to the point, urged upon us, of declaring that there is at least a presumption of failure to meet the constitutional guarantee of assistance of counsel merely because defendant's attorney has been appointed on the day of trial, or is inexperienced in litigation, or makes egregious errors, tactical or strategic, in preparation, in conference, in examining witnesses, or in not investigating or calling potential witnesses.

*Id.* at 640.

In *United States ex rel. Healey v. Cannon*, 553 F.2d 1052, 1057 (7th Cir.), *cert. denied*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977), the Court further observed that:

> The Supreme Court has repeatedly emphasized that the effectiveness of legal representation afforded criminal defendants is to be appraised by normative legal standards which, when applied in a specific factual context, yield a resolution concerning whether a particular defendant received constitutionally adequate assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Part III of the recent case, *U.S. ex rel. Sullivan v. Fairman, supra,* clearly does not compel a result contrary to that here announced. The same is also true of *U.S. ex rel. Cosey v. Wolff,* 727 F.2d 656 (7th Cir.1984) (Failure of defense counsel to interview five exculpatory witnesses was ineffective assistance of counsel).

■ The record at trial in no way supports the specific allegations of incompetence that petitioner argues in his petition.

Petitioner argues that his trial counsel failed to prepare subpoenas for witnesses who could have testified that the petitioner could not receive a fair trial due to pretrial media publicity.

Counsel properly prepared and served several subpoenas (R. 49–51). Five witnesses testified at the hearing on the motion for change of venue from the county with respect to media coverage of petitioner's case (R. 181–224). The information desired in support of the motion was fully presented and argued by counsel.

Petitioner also claims that trial counsel failed to prepare and investigate the case adequately for trial because he did not move to have the prosecutor recuse himself earlier in the trial due to the prosecutor's alleged potential as a witness. Although counsel did not object to the prosecutor trying the case until after the State had rested (R. 498–501), this may well have been a matter of trial strategy. Obviously, counsel was prepared for the situation, for he was able to argue and provide authority for his position. He may have chosen to delay objecting to the prosecutor until after the presentation of the State's case for tactical reasons, or perhaps until that point he did not believe the State would be able to present a prima facie case. Strategic or tactical errors do not amount to constitutionally deficient legal representation. *United States v. Fleming, supra.*

Petitioner also complains that his trial counsel failed to inform him of his right to have an "impartial and non-interested prosecutor." If petitioner means to argue that the prosecutor should have been recused, for reason of allegedly being a potential witness, such argument is without merit for the reasons set forth above.

Petitioner further argues that his counsel failed to research the issue of fairness of trial properly due to pretrial publicity. The record does not reflect evidence of such, nor does petitioner specifically cite what research should have been done, or what additional legal argument should have been made. Petitioner's allegations are unsupported by any facts. *See, e.g.,*

*Reichenberger v. Pritchard,* 660 F.2d 280 (7th Cir.1981).

Petitioner argues that his counsel should have called the prosecutor as a witness. In this case all that the prosecutor could have testified to was that a pair of sandals had been found outside the window from which the escape took place. This testimony could only have been damaging to the petitioner, and failure to solicit it in no way evidences incompetence, the same may indicate prudence by defense counsel.

Petitioner argues that his counsel should have informed the court of one possibility of a conflict of interest of the prosecutor. As argued above this in all likelihood was a tactical decision and cannot be the subject of a hindsight attack.

█ Petitioner argues that counsel failed to notify him that the acceptance of the jury at trial implied waiver of any right to change venue. This argument is only made in petitioner's unverified statement in his motion to correct errors (R. 4–5). Such an allegation is not contained in the record. For this reason petitioner has waived this issue and has failed to exhaust his state remedies on it.

Regardless of this the record at trial evidences that he was not prejudiced by the venue of trial. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

No basis for relief under 28 U.S.C. § 2254 has been stated here. Writ DENIED.