**McKinley DUDLEY, Petitioner,**

v.

**Jack DUCKWORTH, Superintendent, and Indiana Attorney General, Respondents.**

**No. S 85–491.**

United States District Court, N.D. Indiana, South Bend Division.

June 24, 1986.

On Motion For Reconsideration July 10, 1988.

---

McKinley Dudley, Michigan City, Ind., pro se.

David L. Steiner, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

At the outset it should be noted that this petitioner is the same person as in case of *McKinley Dudley v. United States of*

*America,* H 86–188, upon which this court has recently taken action.

In this cause McKinley Dudley seeks relief under Title 28 U.S.C. § 2254. McKinley Dudley is presently incarcerated at the Indiana State Prison pursuant to a state conviction for aiding a robbery as a result of a trial by jury in October 1982. As a result of bifurcated proceedings he was also convicted as an habitual offender and was sentenced to a term of 20 years imprisonment on the aiding a robbery offense and a consecutive term of 30 years for being an habitual offender. Dudley appealed his conviction to the Supreme Court of Indiana which unanimously affirmed it in an extensive opinion by Justice Pirvanik as reported in *Dudley v. State,* 480 N.E.2d 881 (Ind. 1985). The opinion of Justice Pirvanik covered 11 issues and extends from page 881 to page 907 in that reported decision. The facts therein found are subject to the mandates of *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); see also 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

It appears that all the issues raised here were raised in the Supreme Court of Indiana. The issues raised here are:

1. The Court erred by its denial of Petitioner (sic) motion for Discharge based on Indiana Rule of Criminal Procedure 4(B)(1) and (2).

2. The Court erred in denying Petitioner's motion for mistrial after the State of Indiana introduced evidence that a crucial state's witness, Edward Pointer, or his family had received threats when he testified without any evidence whatsoever to connect any of those threats the Defendants/Petitioner, thereby denying Petitioner his right to a fair and impartial trial, due process and his right to confront the witness against him.

3. The Court erred in granting the State's motion for joinder, thereby including the Petitioner, an alleged accessory, to be tried in a case where there was overwhelming evidence against the principals, therefore denying the Petitioner due process and a fair and impartial trial.

4. The Court erred in failing to exclude evidence that the Petitioner Dudley did not say anything to the police when first arrested, thereby commenting on the Petitioner's right to remain silent in violation of his Fifth Amendment right, due process of law and his right to a fair and impartial trial guaranteed to him by the Constitution of the United States under the Miranda decision.

5. The Court erred by failure to reveal to the Defendant/petitioner that Cecil Lewis, an accomplice witness, had perjured himself when he indicated he was not an F.B.I. informant, thereby precluding the jury from hearing the total consideration given by the State of Indiana or the Federal Government in exchange for his testimony and cooperation in this case ... (and) that Gerri Peters, a crucial state's witness has "half a brain" due to surgery she had received in the past.

6. The Court erred in sentencing the Defendant/petitioner to a determinate term of twenty (20) Years for a Class B felony when an examination of the Charging Information sets forth the element of a Class C. felony only ...

7. The Court erred in allowing Cecil Lewis, accomplice, to testify in the nature of an evidentiary harpoon that he and Defendant Butler intended to rob a liquor store.

8. The Court erred in permitting the jury to hear evidence of a third felony which was not proven to be a "prior unrelated" felony in the Habitual Criminal portion of said trial, thereby prejudicing the Defendant/petitioner and denying his right to a fair and impartial trial and due process of law.

9. The Court erred in denying the Defendant/petitioner's request for copies of investigator's notes regarding interviews of defense witnesses which were used by the State to cross-examine those witnesses, thereby denying the Defendant an opportunity to cross-examine and confront the State's witness who purportedly (sic) authored said reports, his right to a fair and impartial trial and due process of law.

10. The Court erred in denying the mistrial motion after the jury saw the Petitioners in handcuffs and restraints the first day of trial.

11. The Court erred in failing to sentence the Defendant/petitioner within thirty (30 days after conviction. IC 35–4.1–4–2 (since repealed) and criminal Rule 11 to require the Court to impose sentence after conviction within 30 days. Defendant/Petitioner (sic) Dudley objected to the delay. No hearing was held and the record fails to disclose a reason for said delay.

The state court record has been filed here and examined pursuant to the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

## II.

### A.

▮ The petitioner first lodges a complaint with regard to the alleged violation of the speedy trial provisions of Indiana Rule of Criminal Procedure 4(B)(1), (2). Any issue as to the timeliness of his trial under the Criminal Procedural Rule of Indiana do not here rise to the level of a constitutional issue under the Fourteenth Amendment of the Constitution of the United States and the petitioner fails to make a Sixth Amendment speedy trial claim under the factors considered in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). He has wholly failed to establish any prejudice resulting from the delay.

### B.

▮ Dudley next complains of a brief reference by the witness Pointer who appeared nervous on the witness stand. The witness Pointer referred to some threatening phone calls received the night before his testimony but did not link any of the defendants then on trial including Dudley to those calls. The Supreme Court of Indiana held that the state trial court judge did not abuse his discretion in denying a motion for a mistrial and this court does not conceive that the Constitution of the United States is here implicated in that decision. It was a very small incident in a fairly lengthy proceeding and does not amount to a denial of a fundamental fairness. See *United States ex rel DiGiacomo v. Franzen,* 680 F.2d 515 (7th Cir.1982).

### C.

▮ Dudley appears here to also complain about his trial with two other defendants namely, Kennis Butler and Rodney Phillips. Again, the procedure of a joint trial generally does not implicate the Constitution of the United States and it certainly does not here. In addition, there is a near total failure by Dudley to show any prejudice here resulting from the joint trial. The evidence as reflected in the record and in the Supreme Court's opinion is very strong as to all of the defendants including Dudley and he simply cannot argue prejudice from the fact that he was convicted on such evidence.

### D.

▮ Dudley raises a more serious problem with regard to a reference to his refusal to talk to Officer Keith Burden when that officer sought to interview Dudley at his residence and he declined to talk. Certainly the state prosecutor would have been well advised to have avoided that sensitive area. Since *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 10 L.Ed.2d 694 (1966) as well as *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) both state and federal prosecutors must be extremely careful to avoid references to this kind of silence by a defendant in a criminal case.

It is to the credit of the state trial judge that he took all appropriate action in striking the answer and admonishing the jury to disregard it. That judge could have done no less. There is no evidence in the record that any effort was made by the prosecutor to further argue or refer to the defendant's silence. There is not here the kind of prosecutorial argumentative reference to silence that was apparent in the record in *Phelps v. Duckworth,* 757 F.2d 811 (7th Cir.1985) *reh'g granted,* 772 F.2d 1410 (7th Cir.1985) (en banc). In *U.S. ex rel Crist v.*

*Lane,* 745 F.2d 476 (7th Cir.1984) prosecutorial conduct which far exceeds anything charged here was held not to violate the due process clause of the Fourteenth Amendment. A full examination of the state record fails to disclose a violation of the values found in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

### E.

Although this court is reluctant to bottom decisions on harmless error it is the present conviction of this court that this minor incident which was immediately corrected by the state trial judge and was not the subject of any further efforts by the prosecutor simply does not approach the kind of egregious prosecutorial misconduct that has been rightfully condemned in this circuit and elsewhere. There can be absolutely no doubt that given the extremely strong case against Dudley that any error here is harmless beyond a reasonable doubt. See *U.S. ex rel Miller v. Greer,* 789 F.2d 438 (7th Cir.1986), Part III of Judge Flaum's majority opinion and the opinion of Chief Judge Cummings in *Phelps v. Duckworth,* 772 F.2d 1410 (7th Cir.1985) at page 1411.

### F.

Dudley next makes argument that there were certain items of evidence withheld by the prosecutor in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Dudley asserts that a conversation between a police officer and the prosecutor was overheard while the jury was out in deliberation and that the police officer allegedly stated that one Cecil Lewis had worked as an F.B.I. informant and that one Gerri Peters was mentally impaired due to brain surgery.

■ It does not appear in the record that Cecil Lewis was asked any question at trial relating to his status as an F.B.I. informant so it is hard to visualize what the alleged perjury or deliberate deception might be in that regard. This court is in agreement with the lengthy statement of Judge Pivarnik at pages 901–902 of the Supreme Court's opinion where he stated:

Applicants claim the trial court erred by not granting a new trial when the State failed to comply with general discovery orders. Appellants advance four separate instances to support their claim. First Appellants allege the State's failure to disclose Cecil Lewis' occupation as an F.B.I. informant and that Gerri Peters had a brain impairment due to surgery was of such prejudicial impact as to merit a reversal. A trial court is granted deference in finding what constitutes substantial compliance with its discovery order. Absent clear error, the trial court's decision will not be overturned. *Hunt v. State* (1983), Ind., 455 N.E.2d 307. Further, a prosecutor's duty to disclose evidence other than that which is particularly requested can be measured by determining whether the evidence is so obviously exculpatory that the failure to disclose it would deny defendant a fair trial. *Richard v. State* (1978), 269 Ind. 607, 382 N.E.2d 899. cert. denied, (1979) 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781. Further, omitted evidence as evaluated in the context of the entire record, must create a reasonable doubt that did not otherwise exist. *United States v. Agurs* (1976), 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342, 354–355.

It is notable in the case at bar that the information undisclosed to the defense is not directly exculpatory, rather it is impeaching evidence. The only evidence before the trial court and before this court that Cecil Lewis was an F.B.I. informant and Gerri Peters was mentally impaired due to brain surgery is an affidavit filed by the defense claiming the Prosecutrix and Officer Kiser had indicated these matters in a conversation after the jury had retired for deliberation. Officer Kiser failed to recall making any statements giving any indication that Cecil Lewis was an F.B.I. informant and Gerri Peters was mentally impaired. In light of the fact that such alleged evidence was merely impeaching in na-

ture, as opposed to directly exculpatory, and the weak evidence support the allegation that the Prosecutrix intentionally withheld exculpatory evidence, we do not find the trial court erred in denying a new trial or that Appellants were denied a fair trial.

This Court cannot conceive that given the best of it for Dudley that the nondisclosure of the aforesaid information would have had any impact whatsoever on the outcome of his trial.

### G.

■ Dudley next complains that he could not be sentenced under the law of Indiana as a Class B felon apparently because the charges did not expressly contain the word "armed". This appears to be a state law claim which does not rise to a federal constitutional level. It is highly doubtful that this petitioner can argue a failure of due process or lack of notice under the Fourteenth Amendment of the Constitution of the United States. Due process requires that the charges against a criminal defendant be stated with sufficient certainty to enable that defendant to prepare an adequate defense as guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States. The Supreme Court of Indiana found that Dudley was fully aware of the charges against him and this court is in total agreement with that conclusion. There was more than sufficient evidence to convict him of the charge of aiding a Class B robbery, that is an armed robbery, and the sentence is within the statutory authority of the state judge who imposed it.

### H.

■ There was evidence that Cecil Lewis had happened to mention that the Chesterton State Bank robbery, the one for which Dudley was convicted, was first discussed in the presence of Lewis at a time when Lewis and the co-defendant Kennis Butler were going out to rob a liquor store. All of the defendants including Dudley moved for a mistrial and the state trial judge denied the mistrial motion. The state trial judge

did order the answer struck and admonished the jury. It is correct that Dudley must here show a violation of his due process rights and prejudice resulting therefrom. In this evidence Dudley was not even mentioned as was emphasized in the opinion of Justice Pivarnik. This was an isolated incident in a lengthy trial which was handled appropriately by the state trial judge and there is no indication of a violation of due process.

### I.

■ During the bifurcated proceeding regarding the status of McKinley Dudley as an habitual criminal Dudley moved the state trial court for an order striking one of three prior unrelated felony convictions from the habitual offender count. The state trial court ordered a 1976 felony conviction stricken since the exact date of that conviction was not established. Dudley apparently now complains that he was prejudiced since the allegation of more than two felony convictions made it easier for the jury to determine he actually had two valid felony convictions.

This court has been made aware of the care with which the state prosecutor must proceed with proof of prior offenses on the charge of habitual offender. See *Williams v. Duckworth*, 738 F.2d 828 (7th Cir.1984). There is nothing in this record that violates the values there announced.

Under the law of Indiana it is settled that the proof of three or more felony convictions should be treated as surplus. If actual proof of more than two felonies is treated as surplus it is not reversible error to allege excess felonies even though they are not subsequently proven. In this case the state prosecutor simply alleged one previous conviction that he failed to prove and the state trial judge appropriately struck that unproved prior conviction from the record. The facts are that the necessary number of felonies were proven beyond a reasonable doubt in order to sustain the conviction of habitual offender. It is very difficult to see how the due process clause of the Fourteenth Amendment is here implicated.

## J.

■ There was a last minute defense witness named Regina Aldridge. She apparently had been hurriedly interviewed by police authorities and some notes made. The complaint is now that those notes should have been produced by the prosecutor. Obviously if this is only a state law issue it does not per se rise to a constitutional level. In a general sense there is no absolute and complete constitutional right to discovery in criminal cases that discovery once permitted should be reciprocal. See *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) and *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). The issue here is certainly not reciprocal discovery. The issue is whether the state prosecutor failed to provide the defendants with notes of one interview with an unanticipated defense witness. The Supreme Court of Indiana at page 902 of its opinion gave extensive treatment to this question and found that there was no prejudice shown by the unintentional withholding of interview notes because the information contained in those notes was of no surprise to the defendants or their counsel. The defendants and their counsel knew what the witness was going to say and Dudley has never there or here claimed surprise. Given the most liberal reading of *Brady v. Maryland* and *United States v. Agurs* this does not rise to a constitutional level. For a federal criminal case in which this kind of argument was made without success in this circuit see *United States v. Mackey*, 571 F.2d 376 (7th Cir.1978).

## K.

■ During the voir dire of the jury in the very earliest stages of the trial apparently Dudley and his co-defendants were brought into the courtroom initially in handcuffs. Counsel for the co-defendant Butler objected thereto and asked that the procedure be discontinued in the future and the state trial judge agreed and such procedure was discontinued.

This court is very familiar with this type of issue and was the author of *Osborne v.*

*Duckworth,* 567 F.Supp. 427 (N.D.Ind. 1983), reversed by unpublished order, 757 F.2d 1292 (D.C.Cir.1985). The appearance of a defendant in a criminal case in handcuffs does not per se violate the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. That is certainly the teaching of *Harrell v. Israel,* 672 F.2d 632 (7th Cir.1982). See also *Dillbeck v. Duckworth,* 585 F.Supp. 1074 (N.D.Ind.1984). In this case the Supreme Court of Indiana found a security need involved and the defendants asked that the practice of bringing them in in handcuffs desist, the state trial judge agreed and the practice ended. In this context the Due Process Clause of the Fourteenth Amendment was not violated.

## L.

Dudley also complains that he was not sentenced in a timely fashion, namely, thirty (30) days, under the relevant Indiana statute. The Supreme Court of Indiana found this was in no way sufficient to award him a new trial and indeed, this issue does not begin to rise to a constitutional level. The record here supports such a conclusion.

It is correct that the mandates of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982) have been fully met here.

A mass of issues have been raised here, in the Supreme Court of Indiana and in the state record. This court has attempted to review them carefully and is mindful that a defendant in a criminal case is entitled to a trial that is substantially fair but a defendant in a criminal case is not entitled to a perfect trial. It is the view of this court based on the record that Judge Robert Roger Bradford of the Superior Court of Porter County, Indiana was confronted with the difficult and complex trial which he handled in a careful and admirable fashion within the framework of the Fourteenth Amendment of the Constitution of the United States. There is no bases for relief under 28 U.S.C. § 2254 presented in the record in this case and such relief is now DENIED.

IT IS SO ORDERED.

ON MOTION FOR RECONSIDERATION

On July 2, 1986 the petitioner, McKinley Dudley, filed a motion for reconsideration with reference to this court's Memorandum and Order entered on June 25, 1986 and draws this court's attention to certain parts of the transcript of the state record at pages 1734 and 1735. The context in which those citations to the record are made must first be understood. Beginning at page 1653 of the state record McKinley Dudley, the petitioner here and the defendant there, voluntarily took the stand and was extensively examined on direct by his own counsel. That direct examination began on page 1653 and concluded at the top of page 1714. At page 1714 at the outset of the state prosecutor's cross-examination of McKinley Dudley the following preliminaries occurred outside of the presence of the jury:

MS. RUDASICS–HARPER: Insofar as the State is going into cross-examination of the witness, I will be objecting to any questions which are designed to elicit from McKinley Dudley a comment attributed to Kennis Butler. I believe that that is very clearly hearsay because it basically places Mr. Butler in the position of having to take the stand to (sic) any comments which Mr. Dudley may make. While I understand that my objection is relatively premature, I also feel that it can be quite prejudicial to Mr. Butler in the juror's mind for me to jump up and object at the point where Nancy or the Prosecutor would say, "What, if anything, did Butler say?" So I would like to see if we can get that straightened out right now as to the Court's feeling on that type of evidence.

MS. TAPOCSI: Your Honor, I would join in that too in case there is any indication that Mrs. Vaidik is going to try to elicit conversations that may have been had with my client also.

MS. VAIDIK: Your Honor, I agree it is hearsay, but it is clearly an exception to the hearsay rule because it is an admission of a Defendant. In addition, the Defendants are able to cross-examine this witness to determine to put holes in the story just like any other witness. It is clearly an exception to the hearsay rule.

THE COURT: Well, I am not particularly worried about the hearsay rule. I am a little more concerned about the Defendants' rights against self-incrimination and forcing them into a position to have to take the witness stand.

MS. RUDASICS–HARPER: And explain something.

MS. VAIDIK: Your Honor, the Bruton rule applies and the statute applies when a co-defendant makes a statement attributable to another co-defendant where a person that didn't hear it is testifying, in the case of Roger Kiser saying that Butler told me that Rodney Phillips did such and such and such and such and the problem with that at that point in time is that the Defendant, in this case Phillips, would be unable to cross-examine Butler as to anything that he might have said to Roger Kiser because Roger Kiser is on the witness stand. We do not have that problem in this case. And, of course, it is prejudicial. I mean, anything that he said out there, if he did, in fact, say that, is going to be prejudicial to Defendant Butler. However, Defendant Butler also has an opportunity to cross-examine McKinley Dudley as to what happened there and the facts in the case. It is clearly an exception to the hearsay rule. The Bruton rule is not involved in this case because then we have a co-defendant taking the stand and the other defendant is able to cross-examined him.

MS. RUDASICS–HARPER: If the Court please, it was the State's request that these people be tried together and, as such, perhaps that will hinder the scope of their cross-examination of this witness because of the self-incrimination problems that it presents with regard to Phillips and Butler, but those are very real problems, and any comments from Dudley, and I don't know what he will say on cross-examination, could well place Butler, you know, even with a sterling sharp and excellent cross-examination, in the position of having to get up there to explain something, and that is my con-

cern. They have elected this form of procedure. This man has a right that must be protected.

MS. VAIDIK: And that right we are talking about is self incrimination, and he is not up on that witness stand and testifying as to that. Had we chosen to make a negotiation with McKinley Dudley and had him take the witness stand on behalf of the State of Indiana as we did in the case of Pointer and in the case of Lewis, through that we were able to get statements of both Butler, McKinley Dudley and Phillips because of the fact that all of these Defendants were able to cross-examine those persons as to what was said.

MS. RUDASICS–HARPER: But this is now a co-defendant proceeding.

THE COURT: Well, again, as Mrs. Harper pointed out, it is a little difficult when it is a little premature. I can appreciate the necessity for doing it prematurely, but I have problems allowing this to continue as to what Defendant Butler said beyond the statements that have already been testified to, and that was approached very cautiously. So I don't know that I can rule on anything at this point. There is certain statements that have already been attributed to him by this witness and certainly, and without objection, and certainly they can be brought up and run into on cross-exam. What I would hope we can do is before going into any more of this statement, at least discuss it at the bench before going into it.

MS. RUDASICS–HARPER: Thank you.

THE COURT: Anything further?

(Jury brought in.)

CROSS–EXAMINATION BY.

MS. VAIDIK

More specifically, McKinley Dudley now asks this court to focus on the following part of that cross-examination transcript:

MS. VAIDIK: Q Did you help Gerri Peters or Diane retrieve her vehicle from the Portage Police Department?

A. No, I didn't.

Q Prior to your arrest and after the three other people got caught, did you tell the police about what you knew about the robbery?

A Say prior to my—would you repeat that?

Q After you got caught and before you were arrested, did you tell the police about what you knew about the robbery?

A I don't understand what you said, before I got caught and after I got arrested? I don't understand what you are talking about.

Q Did you tell the police about what you knew about the robbery?

A No.

MR. GERMANN: Your Honor, could we approach the bench, please?

THE COURT: Yes.

(Whereupon the following discussion was had at the bench outside the hearing of the jury:)

MR. GERMANN: At this time, Your Honor, I am going to move for a mistrial based on the last question that was asked by the Prosecutor. I believe she is attempting to impeach him as a result of his right to not to tell the police anything with this particular incident.

THE COURT: Well, I am not even going to—

MS. VAIDIK: He has no right to remain silent prior to his arrest.

THE COURT: You didn't even need that. The context that that was made in, the Prosecutor phrased the question about the statement, but you understood she was referring to the time before his arrest, and then the question was asked, "Did you ever?" and in that context, it is before the arrest. I think that is the way it is understood, so I will deny the motion.

It must be understood that these particular references in the transcript occurred in the late stages of a state criminal trial when the defendant in that trial had voluntarily taken the stand and had testified extensively on direct examination and was being cross-examined by the state prosecutor.

The question that this court must now confront in the record is whether or not the state prosecutor in the above quoted incident transgressed the Due Process Clause

of the Fourteenth Amendment of the Constitution of the United States as expounded in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). A careful examination of Justice Powell's opinion in *Doyle* indicates a negative answer.

This court has reexamined carefully its opinion of June 24, 1986 and particularly Part E thereof at page 731. Although the question is a close one this court remains convinced of the under harmless error analysis of Judge Flaum in Part III in the opinion in *U.S. ex rel Miller v. Greer,* 789 F.2d 438 (7th Cir.1986) beginning at page 442 that any error committed here by the state trial judge under *Doyle v. Ohio* was harmless beyond a reasonable doubt. This conclusion remains under the careful analysis made by Judge Wood in *United States v. Shue,* 766 F.2d 1122 (7th Cir.1985).

This court is not in the least troubled with the *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) analysis contained in its memorandum of June 24, 1986 and now fully and completely reaffirms the same.

This court has used the verified motion for reconsideration of McKinley Dudley filed July 2, 1986 as an opportunity to fully and completely review the extensive file in this case and this court now respectfully declines to reconsider its order of June 24, 1986. Verified Motion for Reconsideration is now DENIED.