**Lester BUFKIN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 20S00–9804–CR–231.

Supreme Court of Indiana.

Oct. 29, 1998.

Kenneth R. Martin, Goshen, for appellant.

Jeffrey A. Modisett, Attorney General, Kimberly Macdonald, Deputy Attorney General, Indianapolis, for appellee.

BOEHM, Justice.

Lester Bufkin was convicted of murder and sentenced to fifty-five years imprisonment. In this direct appeal, he raises six issues for our review: (1) whether the trial court erred in admitting a photograph of the victim's face; (2) whether it was error for a police officer to testify about Bufkin's arrest for another charge; (3) whether he was denied the effective assistance of counsel; (4) whether the trial court erred in giving a

flight instruction; (5) whether the trial court committed fundamental error in giving an instruction on his failure to testify; and (6) whether the trial court erred in sentencing him. We affirm the conviction, but remand for resentencing because the trial court was mistaken about the proper presumptive sentence.

## Factual and Procedural Background

While at Henry Love's Elkhart apartment on the evening of April 10, 1995, Stacy Proctor observed Lester Bufkin, then fifteen years old, selling crack cocaine to several people. When Latina Joiner first came to the apartment that evening with a friend to buy crack cocaine, Bufkin refused to sell to her and she left. Joiner returned to the apartment some time after 1:00 a.m. when only Bufkin and Proctor remained. After a verbal exchange, Bufkin fatally shot Joiner in the chest. Proctor testified that immediately after the shooting Bufkin went briefly into the kitchen then "[p]ut on his shoes, grabbed his money and dope, and told me to come on." The two promptly left the apartment and went in separate directions.

Bufkin soon arrived at Andrew Mathis' home where he told Mathis that he had shot Joiner because he discovered that she was going to "snitch" to the police about his drug dealing. Mathis then flagged down his friend Don Williams as Williams was driving down the street. Williams drove both Mathis and Bufkin to Goshen where he dropped them off at the home of John Kincaid. Bufkin asked Kincaid to take him to Detroit, but Kincaid said he was too tired and went back to bed. When Kincaid woke up the next morning, Bufkin was still in his home. According to Kincaid, Bufkin asked again to be taken to Detroit. Instead of driving Bufkin to Detroit, Kincaid drove him to the bus station. Bufkin gave Kincaid $50 for the ride.

During trial, the defense attacked the credibility of some of the state's witnesses, particularly Stacy Proctor who had prior convictions for multiple counts of check deception and false informing. The defense also pointed out that Proctor did not tell her story

to the police until ten weeks after the killing. Nevertheless, a jury found Bufkin guilty of murder, and he was sentenced to fifty-five years imprisonment.

## I. Admission of Photograph

Bufkin first argues that the trial court erred in admitting a "gruesome" photograph of the victim's face (State's Exhibit 29), which showed "coagulated blood dangling" from around Joiner's mouth.[1] Because the cause of death was a gunshot to the chest, Bufkin asserts that the photograph did not aid in an understanding of the pathologist's findings but "was admitted solely to shock the jury and inflame their passion." He further contends that, because defense counsel offered to stipulate to the victim's identity, the photograph was not relevant to prove the identity of the victim.

■ We review the admission of photographic evidence for an abuse of discretion. *Humphrey v. State*, 680 N.E.2d 836, 842 (Ind.1997). To constitute reversible error, the probative value of the photograph must be "substantially outweighed by the danger of unfair prejudice[.]" Ind. Evidence Rule 403. At trial, the photograph was offered along with other pictures showing Joiner as she was found after the killing. Most of those photographs showed Joiner slouched over in a chair without her face visible. However, State's Exhibit 29 showed Joiner's face and is therefore marginally relevant to establishing identity. Although arguably somewhat graphic, its probative value is not substantially outweighed by any potential of unfair prejudice. The trial court did not abuse its discretion in admitting the photograph.

## II. Evidentiary Harpoon

■ Bufkin next contends that the prosecutor engaged in misconduct in his questioning of Elkhart Police Captain Towns regarding the circumstances surrounding Bufkin's arrest. Towns testified that Bufkin was arrested in Michigan, on charges in that state. Moments later, the prosecutor asked "[w]hen

---

**1.** Trial counsel objected to the admission of State's Exhibits 23 and 29. On appeal, however, Bufkin only challenges the admissibility of Exhibit 29.

you learned that he was in custody in Detroit, Michigan, what did you do?" Bufkin contends that this question was an "evidentiary harpoon," i.e., it deliberately exposed the jury to evidence—Bufkin's arrest on other charges—known to be inadmissible. *See generally Lay v. State*, 659 N.E.2d 1005, 1011 (Ind.1995). Bufkin did not make a timely objection to Towns' testimony or the State's allegedly improper question at trial. The issue can not now be raised on appeal. *Mftari v. State*, 537 N.E.2d 469, 473 (Ind. 1989) (failure to object at trial waives review of alleged prosecutorial misconduct).

### III. Ineffective Assistance of Counsel

██ Bufkin next asserts that he was denied the effective assistance of counsel in two instances. To prevail on such a claim, Bufkin must show that (1) trial counsel's performance was deficient under prevailing professional norms and (2) the deficient performance was so prejudicial to his case that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Taylor v. State*, 689 N.E.2d 699, 705 (Ind.1997).

The first challenge involves a failure to object to alleged hearsay. During cross-examination of Stacy Proctor, defense counsel brought out the fact that Proctor had waited until ten weeks after the shooting to give a statement to the police. On re-direct examination, the State sought to explain why Proctor had not given a statement sooner. Proctor testified that she was afraid because someone named Black, who had identified himself as Bufkin's cousin, had threatened her. The prosecutor asked "[w]hat did Black threaten to do to you?" Proctor replied, "[i]f I told on Lester that he would burn my kids." Trial counsel did not object to this question or answer, but Bufkin now contends that it was hearsay.

██ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). A statement is not hearsay if offered for another purpose. *Grund v. State*, 671 N.E.2d 411, 415 (Ind. 1996). Proctor's statement was not offered

to prove that Black would "burn" Proctor's children. Rather, it was offered to show why she waited until several weeks after the shooting to talk to the police. Because the testimony was not hearsay, trial counsel was not ineffective for failing to make a hearsay objection. *Lloyd v. State*, 669 N.E.2d 980, 985 (Ind.1996) (when an ineffective assistance of counsel claim is based on trial counsel's failure to make an objection, the appellant must show that, had a proper objection been made, it would have been sustained).

██ Bufkin's second contention is that his trial counsel was ineffective for failing to object to testimony from Captain Towns that allegedly bolstered the testimony of Stacy Proctor. Bufkin draws our attention to the following exchange from the State's cross-examination of Towns:

Q: How much of [Proctor's] testimony did you see?

A: I believe the majority.

Q: From what you observed, did you find her credible?

A: Yes.

Q: Why?

A: I find that it is awfully difficult for people, especially [in] a death investigation, to turn emotions on and off. One thing that I noticed with Proctor is whenever it got to the point of the shooting, the tears, the emotions that came. Talked about a lot of subjects, talked about her boyfriend, and previous convictions, and that kind of stuff, and you really didn't see that. It only kind of came up when the shooting took place, which was an indication, and of course, as I stated, the other witnesses that put credibility to what she says.

Bufkin maintains that this testimony violated Indiana Evidence Rule 704(b) which prohibits witnesses from testifying to opinions concerning, among other things, "whether a witness has testified truthfully[.]" We agree with Bufkin that it was improper for Captain Towns to offer his opinion as to Proctor's credibility. However, we do not agree that trial counsel's failure to object to this testimony denied Bufkin the effective assistance of counsel. Even if this were not a decision

related to trial strategy,[2] it is at most an isolated error that does not render counsel ineffective. *See, .e.g., Smith v. State,* 689 N.E.2d 1238, 1244 (Ind.1997) (an isolated mistake does not amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate).

## IV. Flight Instruction

Bufkin also contends that the trial court erred in instructing the jury on the issue of flight. Beginning with *Bellmore v. State,* 602 N.E.2d 111, 119 (Ind.1992), this Court has recommended against the use of the flight instruction. *Walker v. State,* 607 N.E.2d 391, 394 (Ind.1993); *see also Fleenor v. State,* 622 N.E.2d 140, 147 (Ind.1993); *but see McCord v. State,* 622 N.E.2d 504, 512–513 (Ind.1993) (plurality opinion). Bufkin did not raise an objection at trial (or for that matter in this Court) based on *Bellmore.* Nor has he otherwise contended that a flight instruction was inherently improper. Indeed, he concedes that "[i]t is proper for a jury to consider evidence of flight immediately after the commission of a crime as consciousness of guilt." Brief of Appellant at 17 (citing *Seeley v. State,* 547 N.E.2d 1089 (Ind.1989)). Accordingly, Bufkin's appeal is limited to his objection at trial, which was that there was not sufficient evidence of flight to warrant giving such an instruction.[3] He contends that his departure from Elkhart after the murder "was no more than the act of returning home to Detroit."

 Bufkin's challenge to the sufficiency of evidence of flight is not well taken. We give the trial court's ruling the benefit of "all reasonable inferences which can be drawn from the evidence." *Phillips v. State,* 550 N.E.2d 1290, 1301 (Ind.1990). Stacy Proctor and Stephanie Bryant both testified about Bufkin's hurried departure from the scene of the killing. The testimony of Andy Mathis, Don Williams, and John Kincaid all show that Bufkin was anxious to leave the Elkhart area and return to Detroit. The fact that Bufkin had to wait until Kincaid woke up the next morning to get a ride to the bus station does not change this. If a flight instruction is proper at all, the evidence was sufficient to support it. *See, e.g., Ingram v. State,* 547 N.E.2d 823, 830 (Ind.1989) (defendant ran to girlfriend's nearby house where he told her that he thought he had killed a man, but then turned himself in to the police nineteen hours later); *Agnew v. State,* 518 N.E.2d 477, 478 (Ind.1988) (defendant was found with the victim's car some twenty-four hours later in a city twenty-five miles from the crime scene); *Hegg v. State,* 514 N.E.2d 1061, 1062–63 (Ind. 1987) (defendant in robbery case grabbed the victim's billfold and ran down the alley with it); *Cheney v. State,* 486 N.E.2d 508, 511–12 (Ind.1985) (defendant's automobile hurriedly left the parking lot of the club where he had shot someone); *Tanner v. State,* 471 N.E.2d 665, 668 (Ind.1984) (defendant was absent from the scene of the crime and police did not locate him until he surrendered two days after a warrant was issued); *Clemons v. State,* 424 N.E.2d 113, 119 (Ind.1981) (witnesses testified that the defendant "ran away" from the scene, even though the defendant and his companion stated that they merely continued walking home).

---

2. By allowing Towns to testify on this subject during cross-examination, defense counsel allowed himself the opportunity during re-direct examination to ask his own questions offering a different perspective on Proctor's demeanor while testifying. During re-direct, defense counsel asked Captain Towns "[d]id you see how hard her eyes got when I started asking her questions?" He also asked "if you didn't believe Stacy Proctor, then you wouldn't have any case at all, would you?"

3. Although the thrust of Bufkin's argument on appeal is the insufficiency of evidence of flight, he also suggests that "[t]he instruction fails to alert the jury to innocent interpretations that just as easily could be inferred from the defendant's conduct." Bufkin did not raise this argument before the trial court or tender an instruction that included language to this effect. Therefore, we will not now consider the issue on appeal. Ind. Trial Rule 51(C) ("No party may claim as error the giving of an instruction unless he ... state[s] distinctly the matter to which he objects and the grounds of his objection."); Ind.Crim. Rule 8(B) ("No error with respect to the giving of instructions shall be available ... on appeal, except upon the specific objections made...."); *Ingram v. State,* 547 N.E.2d 823, 829 (Ind.1989) (any grounds not raised at trial are waived for purposes of appeal).

## V. Failure to Testify

■ Bufkin also contends that the trial court erred when it instructed the jury on the defendant's "failure to testify" at trial. The instruction given reads as follows:

Under the law of the State of Indiana a person charged with the commission of crime is a competent witness to testify in his own behalf. However, a person charged with the commission of crime can-not be compelled to testify and is under no duty or obligation to testify. The fact that the defendant did not testify raises no presumption of any kind against him. The defendant's failure to testify shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocent of the defendant.

A defendant has a Fifth Amendment right to have such an instruction given upon request. *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); *Horan v. State,* 642 N.E.2d 1374 (Ind.1994). A defendant also has a state constitutional right under Article I, § 14 not to have this instruction given over his objection. *Priest v. State,* 270 Ind. 449, 386 N.E.2d 686 (1979); *cf. Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) (giving the instruction over a defendant's objection does not violate the Fifth Amendment). Neither is the case here. Bufkin neither requested nor objected to this instruction. We have previously held that giving a failure to testify instruction in the absence of an objection from the defendant is not error. *Priest,* 270 Ind. at 452, 386 N.E.2d at 688–89 (1979); *Moore v. State,* 268 Ind. 519, 521, 376 N.E.2d 1129, 1130 (1978).

## VI. Sentencing

■ The trial court made the following statement when sentencing Bufkin:

Court will sentence the Defendant to 55 years at the department of corrections giving 411 days credit time. Court finds the mitigating circumstances, the Defendant's age. Court finds the aggravating circumstances to be that a gun was used in the killing of the girl. The Defendant shows absolutely no remorse for the offense. It was a very deliberate, calculated and coldhearted act. Because of Defendant's age, I feel that the mitigating and aggravating circumstances offset each other.

The sentencing statement shows that the trial court found one mitigating circumstance which offset the two aggravators.[4] The statement also demonstrates the trial court's belief that fifty-five years was the presumptive sentence for murder. This murder, however, was committed on April 11, 1995. At that time, there were two versions of the sentencing statute for murder on the books. One provided for a forty year presumptive sentence, and the other provided a fifty year presumptive. IND.CODE § 35–50–2–3; *Smith v. State,* 675 N.E.2d 693, 697 (Ind.1996) (holding that the forty-year presumptive should be followed). The presumptive sentence for murder was increased to fifty-five years effective July 1, 1995. *See* Pub.L. No. 148–1995, § 4, 1995 Ind. Acts 3069. Therefore, the trial court was clearly operating under a mistaken understanding of the applicable sentencing law when it imposed a presumptive sentence of fifty-five years.[5] We can only speculate as to what sentence the trial court would have imposed if it had been operating under a correct understanding of the presumptive sentence for murder; therefore, we remand this case for resentencing on the record. *See, e.g., Alvarado v. State,* 686 N.E.2d 819, 824 (Ind.1997) (remanding for resentencing when it was not clear which sentencing statute the trial court applied).

■ Because the issue may arise during resentencing, we briefly consider Bufkin's contention that the trial court failed to consider his lack of a criminal record as a mitigating circumstance when imposing sentence. We review a trial court's sentencing decision only for an abuse of discretion.

---

4. One might read the sentencing statement as listing three separate aggravators. However, the sentencing order lists only two: the fact that a gun was used and the Defendant shows no remorse.

5. Although neither party raised this issue in their briefs, we find the issue of sufficient importance for us to address it sua sponte. *See, e.g., Jones v. State,* 689 N.E.2d 722, 725 (Ind.1997).

*Grund v. State,* 671 N.E.2d 411, 418 (Ind. 1996). The finding of mitigating factors rests within this discretion, and the trial court is not obligated to accept the defendant's version of what constitutes a mitigating factor. *Magers v. State,* 621 N.E.2d 323, 324 (Ind.1993). On the other hand, the trial court may not ignore significant mitigating circumstances that are supported by the record. *Widener v. State,* 659 N.E.2d 529, 534 (Ind.1995).

We do not agree with Bufkin's characterization of his criminal record as "pristine," nor do we believe the trial court abused its discretion in failing to find this supposed lack of criminal history as a mitigating circumstance. As a practical a matter, a fifteen-year-old defendant has not had much time to amass a criminal history. Nevertheless, as noted in the Presentence Investigation Report and discussed during the sentencing hearing, Bufkin admitted he was referred to juvenile authorities in Detroit at age fourteen for Incorrigibility. As a result of this charge, he received a six-month placement at a camp. The trial court was well within the bounds of its discretion when it failed to find the lack of criminal history as a mitigating circumstance.

### Conclusion

We affirm the conviction and remand for new sentencing consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.