**Larry CUTTER, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S00–9603–CR–204.

Supreme Court of Indiana.

March 17, 2000.

Rehearing Denied May 31, 2000.

Annette K. Fancher, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

In October 1995, Larry Cutter was convicted of the murder, felony murder, rape, and criminal confinement of Linda Berry. The trial court merged the felony murder and criminal confinement convictions into the murder conviction and sentenced Cutter to sixty years for murder and fifty years for rape as a Class A felony, to be served consecutively. In this direct appeal, Cutter argues that: (1) a search warrant was deficient; (2) the trial court erred by admitting an inflammatory picture into evidence; (3) two witnesses were not qualified to offer opinion testimony; (4) the trial court erroneously denied his motion for judgment on the evidence on all charges after the State's case-in-chief; (5) the trial court erroneously denied his tendered instruction on the weight of the evidence necessary to sustain a conviction; (6) the trial court erroneously refused his jury instruction regarding venue and violated his constitutional right to be tried in the county in which the offense occurred; and (7) his conviction for rape as a Class A felony violates the Indiana Double Jeopardy Clause. We affirm the trial court on all issues except the last and reduce the rape conviction to a Class B felony consistent with this Court's holding in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999).

## Factual Background

On November 28, 1992, Jeff Toschlog, Lonnie Cox, Daryel Barngrover, and Kevin Sites gathered at Barngrover's house to drink alcohol and play cards. Later that evening, they went to McShane's Lounge on the east side of Indianapolis in Marion County where they encountered Cutter and asked him to join them at their table.

Linda Berry was also a patron of McShane's Lounge that evening. Berry arrived at McShane's noticeably intoxicated. She first stumbled at the waitresses' station and then blocked access to the bar. At some point, Berry befriended Cutter. Several witnesses saw Berry dancing with Cutter and sitting at his table. While Cutter and Sites were still in the lounge, Cutter told Sites that he intended to offer Berry a ride home, and as Sites exited, he saw Cutter helping Berry into Cutter's car. Berry did not return home.

Two days after Berry disappeared, Victoria Long, Berry's life partner, reported her missing. After another four days, Berry's body was discovered on the edge of Jack Jarrett's farm in Delaware County. Berry was found without undergarments and her dentures were missing. Her blouse was pulled down below her breasts, and her jeans were pulled down to mid-thigh. The pathologist testified that Berry's injuries, including hemorrhaging of the eyes and bruises on the neck, indicated that Berry had died from manual strangulation. Berry's other injuries were extensive. Her hands, back, breasts, and face were bruised. Her vagina was bruised in

a manner inconsistent with sexual intercourse. She had two torn fingernails, one of which had broken off at or below the quick and bled at the base. There were scratches on her face, neck, and hands consistent with defensive wounds. The pathologist concluded that all of these injuries were incurred before death.

Cutter was linked to Berry's disappearance by several eyewitnesses from McShane's Lounge. In addition, Jarrett reported to police that on November 30, 1992, he had seen a car similar to the one owned by Cutter on the edge of his property at approximately the same location where Berry's body was later found. When Cutter was first questioned by police, he maintained that he slept in his car outside his house the night of Berry's disappearance. Cutter subsequently consented to a search of his car, where investigators found one of Berry's fingernails and several of her head and pubic hairs. Finally, Cutter's sperm was found on a vaginal swab taken from Berry's body.

## I. The Search Warrant

Cutter first asks this Court to revisit an issue that he raised in an interlocutory appeal to the Court of Appeals, namely, whether the trial court erred when it denied his motion to suppress evidence obtained during the execution of a search warrant. *See Cutter v. State*, 646 N.E.2d 704 (Ind.Ct.App.1995), *trans. denied.* In that appeal, the Court of Appeals made several determinations: (1) the police were authorized by the warrant to seize Cutter in order to obtain body samples; (2) the warrant was supported by probable cause; and (3) the warrant was not defective for allegedly failing to describe Cutter with particularity, to state the offense that had occurred, or to describe the place to be searched and the property to be seized with sufficient specificity. *See id.* at 710–11, 713. The Court of Appeals also determined that the probable cause hearing by telephone substantially complied with Indiana Code § 35–33–5–8, which describes the procedure for establishing probable cause orally or by telephone. *See id.* at 711–12.

The doctrine of the law of the case is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817–18, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *State v. Lewis*, 543 N.E.2d 1116, 1118 (Ind.1989). The purpose of this doctrine is to promote finality and judicial economy. *See Christianson*, 486 U.S. at 815–16, 108 S.Ct. 2166; *Lewis*, 543 N.E.2d at 1118. The doctrine of the law of the case is applied only "to those issues actually considered and decided on appeal." 4A Kenneth M. Stroud, *Indiana Practice* § 12.10 (2d ed.1990) (emphasis omitted); *accord Riggs v. Burell*, 619 N.E.2d 562, 564 (Ind.1993) ("Questions not conclusively decided in a prior appeal do not become the law of the case."); *Egbert v. Egbert*, 235 Ind. 405, 415, 132 N.E.2d 910, 916 (1956) ("[T]he parties have the right to introduce new evidence and establish a new state of facts; and when this is done, the decision of the [court] ceases to be the law of the case ....") (quoting *Alerding v. Allison*, 170 Ind. 252, 258–59, 83 N.E. 1006, 1009–10 (1908)).

Cutter presents no new facts or issues for this Court to consider in evaluating the trial court's decision to deny Cutter's motion to suppress. Accordingly, we apply the doctrine of the law of the case, and the trial court's ruling denying Cutter's motion to suppress is affirmed.

## II. Autopsy Photograph

At trial, the State offered a photograph of the pathologist holding open Berry's vagina, and this photograph was admitted into evidence without objection. The photograph was subsequently used by the pathologist to show the jury the bruising to Berry's vagina. Long was also shown this photograph, and testified that

Berry's vagina appeared much larger than usual in the photograph. Cutter contends that he was prejudiced by this photograph's admission into evidence, and that it was not "relevan[t] to any charge or issue properly before the jury." Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. *See Willey v. State,* 712 N.E.2d 434, 444–45 (Ind.1999).

This Court reviews the trial court's decision to admit photographic evidence for an abuse of discretion. *See Spencer v. State,* 703 N.E.2d 1053, 1057 (Ind.1999); *Fentress v. State,* 702 N.E.2d 721, 722 (Ind.1998); *Bufkin v. State,* 700 N.E.2d 1147, 1149 (Ind.1998). Although a photograph may arouse the passions of the jurors, it is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice." Ind. Evidence Rule 403; *accord Spencer,* 703 N.E.2d at 1057; *Bufkin,* 700 N.E.2d at 1149; *Fentress,* 702 N.E.2d at 722.

Here, the photograph shows the pathologist's hand holding open Berry's vagina to display bruises that were relevant to the "by force" element of the rape charge. *See* Ind.Code § 35–42–4–1(a)(1) (1998). The photograph bore on the State's contention that the rape was of unusual force and accompanied by penetration from an object "like a fist." It also expanded upon Long's testimony that the vagina appeared unnaturally large. Although autopsy photographs in which a pathologist distorts a victim's body parts are ordinarily objectionable, *see Allen v. State,* 686 N.E.2d 760, 776 (Ind.1997), the distortion was necessary to show the jury Berry's largely internal injury. The trial court committed no error, let alone fundamental error, by admitting this photograph into evidence.

### III. Qualification of the Witnesses

#### A. Lay Testimony

Cutter claims that Long was not qualified as an expert to testify as to the unusual dilation of Berry's vagina. In this case, however, Long testified as a lay witness, not as an expert. Indiana Rule of Evidence 701 permits lay witnesses to testify in the form of "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Ind. Evidence Rule 701; *Angleton v. State,* 686 N.E.2d 803, 812 (Ind.1997). Long testified that Berry's vagina, as pictured in the photograph, appeared larger than usual. From this testimony, the jury could have reasonably drawn inferences that penetration had occurred, and in concert with the bruise, that it was accomplished by force. The trial court did not abuse its discretion under the circumstances.

#### B. Expert Testimony

Cutter also claims that the pathologist was not qualified to testify regarding the dilated state of Berry's vagina.[1] At trial, the State asked Dr. Willman, the pathologist, to render an opinion regarding whether Berry's vagina appeared to be unusually dilated at death, to estimate the extent of that dilation, and to explain what would cause it. Cutter objected, arguing that this called for speculation as to whether the dilation was unusual for Berry, and if so, what caused it.

Generally, expert testimony in the form of opinion or otherwise is admissible if the expert's scientific, technical, or other specialized knowledge assists the trier of fact in understanding the evidence or in determining a fact in issue. Ind. Evidence Rule 702(a); *accord Grinstead v. State,* 684 N.E.2d 482, 486–87 (Ind.1997).

1. Cutter also makes a general argument against the admission of DNA evidence. It is well established that there is no inherent bar to the admission of DNA evidence in criminal prosecutions. *See, e.g., Hopkins v. State,* 579 N.E.2d 1297, 1301–04 (Ind.1991).

Dr. Willman had performed between 1000 and 1200 autopsies, and at trial Cutter did not challenge Dr. Willman's qualifications to testify as an expert witness. His testimony regarding the dilated state of Berry's vagina and the effects of death on the appearance of the body falls into the area of specialized knowledge within his scope of expertise and beyond the knowledge generally held by laypersons. The trial court did not abuse its discretion in admitting this testimony under the circumstances.

### IV. Motion for Judgment on the Evidence (Directed Verdict)

 Cutter alleges that the trial court erroneously denied his motion for judgment on the evidence as to all charges[2] at the close of the State's case-in-chief. When a defendant moves for judgment on the evidence, the court is required to withdraw the issues from the jury if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. *See* Ind. Trial Rule 50(A); *Jones v. State,* 697 N.E.2d 57, 58–59 (Ind.1998); *Stewart v. State,* 688 N.E.2d 1254, 1258 (Ind.1997). On review, this Court considers only the evidence most favorable to the State, and the reasonable inferences to be drawn therefrom. *See Jones,* 697 N.E.2d at 58–59. Therefore, in order to avoid judgment on the evidence, the State need only present some evidence supporting each element of each offense. *See id.*

 In this case, Cutter claims that the State failed to present sufficient evidence to establish that he was Berry's killer. To prove murder, the State must establish that "[a] person . . . knowingly or intentionally kill[ed] another human being. . . ." Ind.Code § 35–42–1–1(1) (1998). In its case-in-chief, the State presented the following evidence. Cutter and Berry were patrons of McShane's Lounge the night Berry disappeared. Cutter danced and talked with Berry over the course of the evening. Cutter eventually left McShane's with Berry in tow. Police later found Berry's body at the edge of Jarrett's cornfield. Jarrett saw a car similar to that owned by Cutter near the location where Berry's body was found. Police also found strands of Berry's hair and Berry's broken fingernail in Cutter's car. Under the circumstances, it is reasonable to infer that Cutter took Berry from McShane's and knowingly or intentionally killed her. The State's evidence, together with all the reasonable inferences therefrom, was sufficient to withstand a motion for judgment on the evidence.

 Cutter also claims that the State failed to present sufficient evidence to establish that he raped Berry. To prove rape as a Class B felony, the State must show that "[a] person . . . knowingly or intentionally ha[d] sexual intercourse with a member of the opposite sex when: (1) the other person [was] compelled by force or imminent threat of force; . . . ." Ind. Code § 35–42–4–1 (1998). To prove rape as a Class A felony, the State must also prove that the rape was committed by using or threatening the use of deadly force. *Id.* In this case, the police retrieved Berry's partially clothed body from the edge of a cornfield. She was found without undergarments; her blouse lay just below her breasts and her jeans were pulled down to mid-thigh. The State presented expert testimony and DNA evidence indicating that Cutter's semen was found in Berry's vagina. The autopsy revealed that Berry's vagina was unusually dilated and bruised by penetration of, inter alia, an object the size of a fist, and that she had died by strangulation. From this evidence, it is reasonable to infer that Cutter had sexual intercourse with Berry by

**2.** Because the trial court merged the felony murder and criminal confinement convictions into the murder conviction, here we address only the sufficiency of the evidence with regard to the murder and rape convictions.

force or threat of force. The trial court did not err by denying Cutter's motion for judgment on the evidence.

## V. Jury Instructions

 Cutter next argues that the trial court erroneously refused his tendered instruction regarding the weight of the evidence required to sustain his convictions. In reviewing a trial court's decision to give or refuse tendered jury instructions, the Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Wooley v. State,* 716 N.E.2d 919, 926 (Ind.1999). In this case, the refused instruction states:

> Evidence which merely tends to establish a suspicion of guilt, or evidence which tends to establish mere opportunity to commit the offense charged, is clearly insufficient to sustain a conviction. [A] verdict based merely on suspicion, opportunity, probability, conjecture, speculation, and unreasonable inference of guilt gleaned from vague circumstances or evidence is not sufficient.

The trial court gave the jury the following preliminary and final instructions:

> Instruction No. 8
>
> A reasonable doubt is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.
>
> To prove the defendant's guilt of the elements of the crimes charged beyond a reasonable doubt, the evidence must be such that it would convince you of the truth of it, to such a degree of certainty that you would feel safe to act upon such conviction, without hesitation, in a mat-

ter of the highest concern and importance to you.

> Instruction No. 16
>
> The law presumes the Defendant to be innocent of the crimes charged, and this presumption continues in his favor throughout the trial of this cause.
>
> It is your duty, if it can be reasonably and conscientiously done to reconcile the evidence upon the theory that the defendant is innocent, and you cannot find the defendant guilty of the crimes charged in the information unless the evidence satisfies you beyond a reasonable doubt of his guilt.

The content of Cutter's tendered instruction was sufficiently addressed in Instructions 8 and 16, and, therefore, the trial court did not abuse its discretion in refusing his tendered instruction.

## VI. Venue

 Cutter claims that he was denied his right to be tried in the county in which the offense occurred. Cutter raised the issue by first tendering a jury instruction regarding venue, and, when that was rejected, by moving for a directed verdict on the ground that venue was not established. The right to be tried in the county in which the offense was committed is a constitutional and a statutory right. *See* Ind. Const. art. I, § 13; Ind.Code § 35–32–2–1(a) (1998); *Weaver v. State,* 583 N.E.2d 136, 140–41 (Ind.1991). Venue is not an element of the offense. *See Sizemore v. State,* 272 Ind. 26, 31, 395 N.E.2d 783, 787 (1979). Accordingly, although the State is required to prove venue, it may be established by a preponderance of the evidence and need not be proven beyond a reasonable doubt. *See id.; Neblett v. State,* 396 N.E.2d 930, 932 (Ind.Ct.App. 1979).

 Venue is commonly an issue for determination by the jury. *See* 16B William Andrew Kerr, *Indiana Practice* § 22.9f(2) (1998); *see also Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997) (venue issue submitted to the jury). This is be-

cause venue typically turns on an issue of fact, i.e., where certain acts occurred. If so, it is appropriate for the court to instruct the jury on venue. *See Weaver,* 583 N.E.2d at 142. Even when venue turns on issues of fact, however, a trial judge may refuse to instruct the jury on venue if it presents no genuine issue. *See United States v. Massa,* 686 F.2d 526, 530 (7th Cir.1982) ("[W]here venue is not in issue, no court has ever held that a venue instruction must be given."). *Cf. Dudley v. State,* 480 N.E.2d 881, 903 (Ind.1985) (holding that the trial court's instruction to jurors that it had already determined venue as a matter of law did not invade the province of the jury), *habeas relief den'd,* 693 F.Supp. 727 (N.D.Ind.1986), *judgment rev'd on other grounds,* 854 F.2d 967 (7th Cir.1988).

 Cutter first raised the venue issue by submitting the following proposed instruction, taken from *Conrad v. State,* 262 Ind. 446, 450, 317 N.E.2d 789, 791 (1974):

> If you find from the evidence that the offense charged in the information occurred outside of Marion County, Indiana, but that the offenses were not part of a common plan, design, and intent to confine, rape, and kill Linda Berry which originated in Marion County, Indiana, and was not part of one continuous course of action by the defendant, but was a separate and independent set of facts occurring outside of Marion County, then the State would have no jurisdiction to prosecute the defendant for the offenses as charged. You must find the defendant not guilty.

Among other things, a trial court need not give a tendered instruction when there is not evidence in the record to support the giving of the instruction. *See Wooley v. State,* 716 N.E.2d 919, 926 (Ind.1999).

 We conclude that it was proper for the trial court to refuse Cutter's instruction because there was not evidence in the record to support the giving of the instruction.[3] Cutter did not testify and the victim is dead. No one else was present in the vehicle where at least some criminal acts occurred. The two entered the car in Marion County, perhaps without any crime yet in progress, and the victim's body was found two counties away. Thus, although there is no doubt that a crime was committed, it is wholly speculative where the crime was committed. Although the right to be tried in the county in which the offense occurred is grounded in the Indiana Constitution, the constitution does not contemplate exonerating criminals simply because the nature of the crime itself makes venue unknowable. Under these circumstances, the legislature has specifically provided that trial is proper in any county in which an act "in furtherance of" the offense occurred. Indiana Code § 35–32–2–1 provides:

> (a) Criminal actions shall be tried in the county where the offense was committed, except as otherwise provided by law.
>
> . . . .
>
> (d) If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense.

Subsection (d) is consistent with the constitutional mandate that, where venue can be established, the defendant has a right to be tried in that locale. By its terms, subsection (d) applies only where "it cannot readily be determined in which county the offense was committed." On this record, the location of the charged offenses of murder and rape were left to pure speculation even though there was overwhelming

---

**3.** We also note that it is questionable whether Cutter's instruction was an accurate statement of the law. *Conrad* involved the jurisdiction of the State of Indiana to prosecute a crime that may have occurred in Ohio, rather than a challenge to venue in a particular county. *See* 262 Ind. at 450, 317 N.E.2d at 791. The tendered instruction also omits the lesser burden of proof required to establish venue.

evidence that the crimes occurred somewhere in central Indiana. Because the location of the crime could not be established, subsection (d) applied, and the State was required to show by a preponderance of the evidence only that an act in furtherance of the offense occurred in Marion County. That was undisputably done.

Several witnesses testified to seeing Cutter and Berry talking and dancing at McShane's Lounge in Marion County on the evening of November 28, 1992. Sites saw Cutter exit the lounge with Berry and help her into Cutter's car. As a matter of law, this step, which may itself have been innocent, but nonetheless in furtherance of the crime, satisfied the State's burden of proving venue by a preponderance of the evidence. There is no conflicting evidence. Accordingly, the trial court properly rejected Cutter's instruction and denied his motion for a directed verdict, without violating his right to be tried in the county in which the offense occurred.

## VII. Double Jeopardy

Finally, Cutter argues that his conviction for murder, along with rape as a Class A felony, as opposed to a Class B felony, violates the State Double Jeopardy Clause. Rape as a Class B felony is defined by statute as "knowingly or intentionally ha[ving] sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force; . . . ." Ind.Code § 35–42–4–1 (1998). The offense is elevated to a Class A felony "if it is committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to a person other than a defendant." *Id.*

■ Cutter contends that the deadly force element of the rape charge should merge with the deadly force element of the murder charge. Count I, the murder charge, alleges death by manual strangulation. Count III, the rape charge, alleges sexual intercourse by threat of deadly force or deadly force. The language of these charges was read to the jury. In light of this Court's holding in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), and under the evidence presented in this case, Cutter's rape conviction cannot be elevated to a Class A felony by the same evidence of deadly force that formed the basis of the murder conviction. The jury was presented with evidence at trial that Berry was brutally raped. In addition to finding Cutter's semen on Berry's pants and in her vagina, the pathologist testified that the bruises to Berry's vagina were such that a human penis could not have inflicted them. Nonetheless, based on the charging information and the jury instructions, it is highly likely that the same evidence that constituted the essential elements of murder—the strangulation as a "deadly force"—was included among the evidence establishing the "using or threatening the use of deadly force" element of rape as a Class A felony. Accordingly, pursuant to the "actual evidence" test set forth in *Richardson*, 717 N.E.2d at 52–55, we remand this case to the trial court to reduce Cutter's rape conviction to a Class B felony.[4]

## CONCLUSION

We affirm in part, reverse in part, and remand to the trial court with instructions to reduce Cutter's rape conviction from a Class A felony to a Class B felony and impose a twenty-year sentence on that count to run consecutive to the sixty-year sentence for murder.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

**4.** Because the trial court sentenced Cutter to maximum and consecutive sentences on both counts, there is no reason to remand to the trial court for a new sentencing hearing. *Cf.*

*Wise v. State*, 719 N.E.2d 1192, 1201 (Ind. 1999). Instead, we direct the trial court to impose the maximum sentence for rape as a Class B felony.