Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Jan 24 2012, 8:48 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**MARIA E. MESOLORAS**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMIAH BROWN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 18A04-1105-PC-309 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-0701-PC-1

**JANUARY 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Petitioner Jeremiah Brown appeals the denial of his petition for post-conviction relief. We affirm.

Brown fatally stabbed James Seldomridge. The State charged Brown with murder, Indiana Code section 35-42-1-1 (2001), and voluntary manslaughter, Indiana Code section 35-42-1-3 (1997). Brown and the State entered into a plea agreement, pursuant to which Brown pleaded guilty to voluntary manslaughter and the State dismissed the murder charge. The trial court sentenced Brown to forty years, the maximum sentence permitted under the parties' plea agreement. Brown appealed, and this Court affirmed the trial court's sentence in an unpublished Memorandum Decision. See Brown v. State, Cause No. 18A02-0504-CR-356 (Ind. Ct. App. Jan. 6, 2006), trans. denied.

Next, Brown filed a petition for post-conviction relief. The post-conviction court held a hearing on Brown's petition. Subsequently, the court denied Brown's petition, and this appeal followed.

Brown raises one issue, which we restate as: whether Brown received ineffective assistance of appellate counsel. In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 469. Where, as here, the post-conviction court enters findings and conclusions in accordance with Indiana Post-Conviction Rule (1)(6), we will reverse

2

upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. Id.

To establish ineffective assistance of counsel, a defendant must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. Lee v. State, 892 N.E.2d 1231, 1233 (Ind. 2008). To establish deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Henley v. State, 881 N.E.2d 639, 644 (Ind. 2008). To establish prejudice, the defendant must show a reasonable probability (that is, a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. If we can resolve an ineffective assistance claim on the question of prejudice, we need not address whether counsel's performance was deficient. Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009). Claims of ineffective assistance of appellate counsel fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Carter v. State, 929 N.E.2d 1276, 1278 (Ind. 2010).

In this case, attorney Joseph P. Hunter represented Brown in Brown's sentencing appeal. Brown contends that Hunter failed to effectively present a claim that Brown's sentence was inappropriate in light of the nature of the offense and the character of the offender pursuant to Indiana Appellate Rule 7(B). In that appeal, a majority of the panel determined that Brown waived any challenge to the appropriateness of his sentence because Brown failed to offer an argument supported by argument or by citation to

3

authority. Judge Bailey, dissenting, would have determined that Brown's sentence was inappropriate in light of the nature of the offense and the character of the offender.

A different panel of this Court might have reasonably concluded otherwise than did the majority. Such a panel might well have reasoned that appellate counsel did indeed present an Appellate Rule 7(B) argument clothed in allegations of invalid aggravators and ignored mitigators. The Appellate Rule 7(B) argument, under such reasoning, would not have been considered waived.

Nevertheless, the majority decision of this Court held that the Appellate Rule 7(B) argument was waived. We determine that it is appropriate to give deference to the majority decision. See Bowles v. State, 891 N.E.2d 30, 32 (Ind. 2008) (discussing "law of the case" and relying upon Cutter v. State, 725 N.E.2d 401, 405 (Ind. 2000)). The Bowles majority held that the doctrine of the law of the case was dispositive, even though application of the law of the case doctrine is viewed neither as a jurisdictional principle nor a procedural absolute. In this regard, as our Supreme Court noted in Cutter, "The doctrine of the law of the case is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal . . . ." 725 N.E.2d at 405 (emphasis supplied).

Notwithstanding this permissive rather than mandatory application of the law of the case, we note that the earlier majority decision in this case was validated by denial of transfer, albeit by a 3-2 vote, and the Court of Appeals decision was certified on April 27, 2006, thereby closing the book upon this issue of waiver. For this reason we decline to revisit the matter.

4

We therefore address whether Brown was prejudiced by Hunter's waiver of his claim under Indiana Appellate Rule 7(B). That rule provides, in relevant part, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We may look to any factors appearing in the record to conduct the examination. Schumann v. State, 900 N.E.2d 495, 497 (Ind. Ct. App. 2009). The burden is on the defendant to demonstrate that his or her sentence is inappropriate. Major v. State, 873 N.E.2d 1120, 1130 (Ind. Ct. App. 2007), trans. denied.

The "nature of the offense" portion of the standard articulated in Appellate Rule 7(B) speaks to the statutory advisory sentence for the class of crimes to which the offense belongs. Id. Our Supreme Court has noted that the advisory sentence is the "starting point" the Legislature has selected as an appropriate sentence for the crime committed. Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (2007). However, this Court has held that although the advisory sentence may be the appropriate sentence, it is not a "mandatory starting point." Richardson v. State, 906 N.E.2d 241, 245 (Ind. Ct. App. 2009). For our purposes of review under Appellate Rule 7(B), we will first look to the advisory sentence to guide us in determining whether the sentence imposed is inappropriate given the nature of the offense and the character of the offender.

At the time Brown committed his crime, the sentence for voluntary manslaughter as a Class A felony was a fixed term of thirty years, with not more than twenty years added for aggravating factors and not more than ten years subtracted for mitigating

circumstances.  Ind. Code § 35-50-2-4 (1995).  The trial court sentenced Brown to forty years.

Our review of the nature of the offense reveals that on the evening of March 1, 2004, Brown, who was twenty-one years old, drank alcohol and consumed illegal substances at a friend's residence and then at his father's residence.  In the early morning hours of March 2, 2004, Brown took a knife from his father's residence, went to James Seldomridge's home, and broke into the home by throwing an outdoor grill through a window.  Seldomridge was fifty-four years old and had emphysema.  Brown stabbed Seldomridge approximately fifteen times.  Brown left, and Seldomridge managed to call police before losing consciousness.  Seldomridge lapsed into a coma and died several days later from blood loss caused by the stab wounds.  After the police arrested Brown and took him to jail, Brown struggled with the officers.  Brown challenged one officer to come into his holding cell "so he could kill" the officer.  Appellant's Direct Appeal App. p. 104.  Brown contends that Seldomridge had molested him several years prior and may have at some point in the past molested Brown's younger brother, who had committed suicide ten days prior to Seldomridge's death.  However, Seldomridge, who was much older than Brown and suffered from a medical condition, did nothing to directly provoke Brown's brutal attack.  Furthermore, Brown's conduct at the police station after his arrest reveals a violent nature beyond his grievance against Seldomridge.

Brown contends that he did not plan or premeditate the offense.  The nature of the crime of voluntary manslaughter is that one commits the crime under "sudden heat."  See Ind. Code § 35-42-1-3.  Nevertheless, it is undisputed that Brown took a knife with him

6

to Seldomridge's house. Brown may not have specifically intended to kill Seldomridge as he went to Seldomridge's home, but he clearly elevated the potential for violence by bringing a knife and by breaking in through a window.

The character of the offender portion of the standard set forth in Appellate Rule 7(B) refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. <u>Major</u>, 873 N.E.2d at 1131. Brown presents several challenges in relation to his character. First, he argues that his criminal history is minor in nature and cannot support an enhanced sentence. As a juvenile, Brown received adjudications for possession of a knife at school, incorrigibility, and truancy. He was also adjudicated a juvenile for an act that would have constituted conversion, a misdemeanor, had it been committed by an adult. After becoming an adult, Brown was convicted of failure to stop at the scene of an accident, resisting law enforcement, public intoxication, illegal consumption of an alcoholic beverage, and pointing a firearm, all misdemeanors. All of these offenses are minor in nature and unrelated to Brown's conviction for voluntary manslaughter. We cannot say that Brown's criminal record, standing alone, would provide an appropriate basis for sentence enhancement. However, as we have already discussed, the nature of Brown's offense was callous and brutal. <u>See</u> <u>Suprenant v. State</u>, 925 N.E.2d 1280, 1285 (Ind. Ct. App. 2010) (affirming an enhanced sentence for murder where the defendant did not have a serious prior criminal history but the nature of the offense was "particularly brutal"), <u>trans.</u> <u>denied</u>.

Next, Brown argues that he had a traumatic childhood. Both of his parents had substance addiction problems, and Brown's stepfather dealt illegal drugs and physically

7

abused Brown. In addition, Brown's family allowed him to use alcohol and drugs from a young age. He began drinking consistently when he turned eight, used marijuana consistently from age twelve or thirteen, used cocaine beginning at age seventeen or eighteen, and used methamphetamine several times starting at age twenty. Furthermore, Brown claims that Seldomridge molested him several years before he killed Seldomridge.

Our Supreme Court has consistently held that evidence of a difficult childhood "warrants little, if any, mitigating weight." Ritchie v. State, 875 N.E.2d 706, 725 (Ind. 2007). Additionally, after Brown became an adult and was convicted of public intoxication and illegal consumption of an alcoholic beverage in 2002, the trial court sentenced him to attend a substance abuse program as part of supervised probation. Brown did not benefit from the program and instead continued to abuse drugs and alcohol.

Brown also contends that his enhanced sentence is inappropriate because he is mentally ill. There are several considerations that bear on the weight, if any, which should be given to mental illness in sentencing. These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. Krempetz v. State, 872 N.E.2d 605, 615 (Ind. 2007).

In this case, Brown has been diagnosed at various times as suffering from post-traumatic stress disorder, explosive disorder, major depressive disorder, borderline personality disorder, and paranoid personality disorder. However, Brown presented little

evidence that his mental illness rendered him unable to control himself. Frank Krause, a psychologist, examined Brown and determined that Brown's substance abuse was the trigger that caused him to be unable to control his behavior. Furthermore, regarding overall limitations on functioning, Brown was also examined by psychiatrist Craig E. Buckles, who noted that Brown was able to hold a job, maintain an apartment, and take college classes.

Turning to the duration of Brown's mental illness, Dr. Buckles asserted that he has a "long history of mental health, substance abuse, and legal issues." Appellant's Direct Appeal App. p. 46. Nevertheless, the nexus between Brown's mental illness and the crime is minimal. Dr. Buckles asserted that Brown's mental illness would not have impaired his judgment "to the extent that he would forget it is wrong and unlawful to murder." Id. at 47. Dr. Buckles further stated that Brown's use of "substances to the point of memory loss may have contributed to his actions." Id. Krause concluded that Brown "has the capacity to appreciate that his abuse of alcohol and drugs is wrong. He certainly has the capacity to conform his conduct to the requirements of the law . . . ." Id. at 44. We conclude from the foregoing that Brown's mental illness bears minimal weight on our consideration of his character in relation to his crime. See Scott v. State, 840 N.E.2d 376, 384 (Ind. Ct. App. 2006) (concluding that defendant's mental illness should have been given little weight where defendant was capable of controlling his behavior, did not have significant limitations on his functioning, and failed to identify a nexus between his mental illness and the offense), trans. denied.

Finally, Brown contends that he had taken steps to turn his life around by seeking emancipation from his dysfunctional family, obtaining gainful employment, earning his G.E.D., and taking college courses. While such actions are commendable, we note that Brown accrued several of his adult misdemeanor convictions at the same time that he obtained his G.E.D. and attended college courses, which undermines his claim that he was a law-abiding citizen.

Although Brown's minimal criminal history, abusive childhood, and history of mental illness require consideration, those factors are outweighed by the viciousness of Brown's attack. Brown has failed to demonstrate that his forty-year enhanced sentence is inappropriate. In the absence of a meritorious claim under Indiana Appellate Rule 7(B), Brown was not prejudiced by Hunter's failure to effectively present such a claim, and we cannot conclude that Brown received ineffective assistance of appellate counsel. Consequently, we are not left with a firm and definite conclusion that a mistake has been made, and we affirm the trial court's denial of Brown's petition for post-conviction relief.

Affirmed.

KIRSCH, J., and MAY, J., concur.