

FILED

Jul 30 2019, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randy Rogers,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 30, 2019

Court of Appeals Case No.
18A-CR-3023

Appeal from the Marion Superior
Court

The Honorable Angela Davis,
Judge

Trial Court Cause No.
49G16-1808-CM-28255

**Brown, Judge.**

[1] Randy Rogers appeals his conviction for invasion of privacy as a class A misdemeanor. He raises one issue which we revise and restate as whether the trial court properly admitted certain text messages. We affirm.

*Facts and Procedural History*

[2] On August 25, 2018, Sierra Johnson and her best friend, Jasmine Arnold, went to a club, left at some point, and went to Jasmine's apartment. When they arrived, Rogers, who lived with Jasmine, was present. Rogers became angry and swung a pillow at Johnson and Jasmine. Johnson "got up," attempted to diffuse the situation, and told Rogers to calm down. Transcript Volume II at 10. He threw her into a wall, which hurt her. She then "got up and . . . punched him hard," went to the bathroom, and pushed her foot up against the door, but Rogers kicked down the door. *Id.* at 11. He pushed and grabbed Johnson, and shoved her down three or four times. Johnson suffered the loss of a nail, scratches on her chin, and bruises to her arm, back, face, and eyes.

[3] The State charged Rogers with Count I, domestic battery as a class A misdemeanor, and Count II, battery resulting in bodily injury as a class A misdemeanor. The State later filed an amended information to add Count III, invasion of privacy as a class A misdemeanor, and Count IV, attempted obstruction of justice as a level 6 felony.

[4] On November 15, 2018, the court held a bench trial. The State moved to dismiss Count I, and the court granted the motion. Johnson testified that she

knew Rogers for about ten or eleven years and to the events of August 25th. She also testified that she received a subpoena to come to court for a bench trial on September 20th and that, while she was in the victim advocate's room, she received a text from Rogers while there was a no contact order in place. The prosecutor showed an exhibit to Johnson, and she indicated that it contained "[t]exts from Randy" which accurately reflected the text messages she received on September 20th. The prosecutor moved to admit the messages as State's Exhibit 28, and Rogers's counsel objected "as to foundation" and argued: "For one thing we don't know exactly who, although it says Randy at the top, that it doesn't have any numbers and it also doesn't have anything on the phone that identifies the phone as belonging to [Johnson]. We would object as to speculation as to the original and ask for the original on the phone." *Id.* at 20. The court sustained the objection at that time and allowed the prosecutor to ask follow-up questions.

[5] The following exchange then occurred:

Q So did you – how did you receive these text messages?

A Via text from Randy.

Q And who's phone was it on?

A It was on my phone.

Q Okay, and it says Randy at the top; is that the only Randy you have in your phone?

A Yes.

Q Okay. And is that how you know the defendant by?

A  Yes.

Q  So if you were receiving text messages from Randy it would be from the defendant?

A  Yes.

*Id.* at 20-21.  The prosecutor again moved to admit the exhibit, Rogers's counsel renewed his objection, and the court admitted the exhibit.

[6]  The screenshot of text messages with the name "Randy" at the top states:

> I apologize that u got hurt.  I swear u know I would never hurt you.  Or anybody in ur family.  15 years we been knowing each other.  We can talk about everything outside of court.  But u DON[']T have to testify.  U know I love u like a little sister, and things got out of control that night.  Do u want me to go to jail?  I mean I did 3 weeks already.  But if I'm convicted I'm facing jail.  This is serious.  And jasmine can't take care of [N.] by herself.  Do u want that?
>
> U can just walk out.  Now, and I promise I will make it up to u.  don't take me away from my child.  And mess up our family relationship.  Your mom is like my mom.  U know that.
>
> If ur sure in ur heart that u want to testify.  Just tell me now.  And I can make my decision.  There is no point in y'all staying here.

State's Exhibit 28.

[7]  On redirect examination, Johnson testified that Rogers apologized in his text message.  The prosecutor asked: "Was there another incident where he did?"  Transcript Volume II at 25.  She answered: "He did apologize."  *Id.*

[8] After the State rested, Rogers's counsel moved to dismiss Count IV, attempted obstruction of justice, pursuant to Rule 41(B). After some discussion, the court granted the motion. Rogers testified that he and Jasmine had an altercation, Johnson tried to break it up and started pushing him, and he never pushed her. When asked about the damage to the drywall shown in photographs presented by the State and admitted by the court, he stated a lot of the damage occurred previously and the house had been vandalized.

[9] After the defense rested, Rogers's counsel stated: "And very quickly . . . since the May-the Court has already found identity for the purposes of the text messages we're no longer contesting that he sent this beyond a reasonable doubt at this time." *Id.* at 46. After counsels' arguments, the court stated in part:

> The Court does not believe a word that Randy Rogers said. His texts on the IOP which you are not contesting, he admits it . . . I apologize that you got hurt. Telling her to leave while she is in court for a court trial is the most egregious IOP that I've ever seen. Telling her that you can just walk out when somebody is subpoenaed under a Court Order is not how the Court system works and for you to try to say otherwise is, shows exactly where your thought process is. I don't believe that it rose to the level of attempted obstruction of justice but it's pretty close. And I can't find you guilty of it but I can find you guilty of invasion of privacy. I'm the one who put the Protective Order in place and it was still in place. She testified that while she was in with the Court Advocate that you were sending her messages telling her that you can walk out and you promise to make it up to her. Well, that is not appropriate and the Court does not believe you.

*Id.* at 49. The court found Rogers guilty of Count II, battery resulting in bodily injury, and Count III, invasion of privacy. The court sentenced him to 365 days for Count II to be served consecutive to a suspended sentence of 365 days for Count III.

## *Discussion*

[10] The issue is whether the trial court abused its discretion in admitting certain text messages. Rogers asserts that the information in the text messages that things "got out of control that night" could have come from anyone cursorily familiar with him and the events that transpired on the night the incident took place. Appellant's Brief at 17. He also asserts that the evidence of his authorship is drawn further into question by the fact that Johnson testified she and Rogers had known each other for ten to eleven years while the author of the messages says they had known each other for fifteen years. The State argues that the messages were clearly authenticated under Ind. Evidence Rule 901.

[11] Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We further note that failure to object to the admission of evidence normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. *See Whatley v. State*, 908 N.E.2d 276, 280 (Ind. Ct. App. 2009) (citing *Cutter v. State*, 725 N.E.2d 401, 406 (Ind. 2000), *reh'g denied*), *trans. denied*.

[12]     We note that while Rogers's counsel initially objected to the admission of the exhibit, he later stated "the Court has already found identity for the purposes of the text messages we're no longer contesting that he sent this beyond a reasonable doubt at this time." Transcript Volume II at 46. Rogers has waived this issue, and in any event we could not say that reversal is warranted.

[13]     "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Ind. Evidence Rule 901(a). "Absolute proof of authenticity is not required." *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014) (quoting *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied*). The proponent of the evidence needs to establish only a reasonable probability that the document is what it is claimed to be. *Id.* Once this reasonable probability is shown, any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility. *Id.* Additionally, authentication of an exhibit can be established by either direct or circumstantial evidence. *Id.* Ind. Evidence Rule 901(b)(1) provides that "evidence that satisfies the requirement" includes "[t]estimony that an item is what it is claimed to be, by a witness with knowledge."

[14]     The record reveals that Johnson testified she knew Rogers for about ten or eleven years and received a text from him while there was a no contact order in place and while she was in the victim advocate's room. When showed State's Exhibit 28, Johnson indicated that the exhibit constituted "[t]exts from Randy" and that they accurately reflected the text messages she received on September

20th. Transcript Volume II at 19. Johnson also testified that she received the messages via text from Randy on her phone, that he is the only Randy she has in her phone, that she knows the defendant by Randy, and that if she were receiving text messages from Randy it would be from the defendant. The content of the text messages referred to the relationship between Rogers and Johnson, mentioned Jasmine, who Rogers testified he lived with, mentioned the night of the offense, included an apology, informed Johnson that she did not have to testify, and referenced the prospect of jail time. Under the circumstances, we cannot say that the trial court abused its discretion in admitting the evidence.[1]

For the foregoing reasons, we affirm Rogers's conviction.

Affirmed.

May, J., and Mathias, J., concur.

---

[1] Although this particular text message was adequately authenticated by the witness's testimony, the better practice would be to ask further detailed questions i.e., whether the message appears to have been altered in any way.